# EXHIBIT A

VIRGINIA:

## IN THE CIRCUIT COURT FOR SCOTT COUNTY

RONALD A. McCLELLAN,

        Complainant

V                                                    Case No. CL18000646-00

COMMERCIAL ELECTRONICS, INC.
**SERVE: Linda W. Parsons, Registered Agent**
**204 E Jackson Street**
**Gate City, VA 24251**

        Defendant

## COMPLAINT

COMES NOW the Complainant, Ronald A. McClellan, by counsel, and respectfully represents as follows:

1. The Complainant is, and at all times mentioned herein, a resident of Scott County, Virginia.

2. The Defendant, Commercial Electronics, Inc., located at 204 East Jackson Street, Gate City, Virginia, is a corporation organized under the laws of the Commonwealth of Virginia and doing business throughout the Scott County area.

3. On or about 1987, the Complainant began employment with the Defendant on an hourly basis and Complainant continued in that capacity until on or about July, 2001.

4. On or about July, 2001, the Defendant met with the Management Group, of which Complainant was a member as Lead Line Gear Supervisor, and requested that the members of the group agree to become salaried employees rather than hourly based upon the incentive that each member would receive five (5) percent of net profit if the Corporation's profit exceeded $100,000

moving forward for each specific year. Beginning in 2001, the Defendant paid unto Complainant an amount of $6,750.00 as and for his incentive, the Defendant paid no amount in 2002, and for each successive year thereafter, the Defendant paid a fixed amount of $5,000.00 per year to Complainant.

5. On or about 2014, Defendant requested that Complainant execute and Employment Agreement that included a covenant not to compete.

6. As a result of a knee injury, Complainant was placed on Family Medical leave on or about August 20, 2017. Complainant continued to work within the confines of the Family Medical Leave Act.

7. On or about November, 2017, Complainant was terminated from his employment with Defendant. To Complainant's best information and belief, he was terminated based upon the fact that he had been working less based upon the confines of Family Medical Leave Act.

8. At the time of Complainant's discharge, he was contacted by Defendant regarding the Employment Agreement executed by Complainant in 2014 which included a covenant not to compete. A copy of the Employment Agreement is not attached hereto based upon the Defendant's refusal to provide Complainant with a copy of the same.

9. The Defendant made oral and written promises and representations to the Complainant regarding incentive payments and therefore was legally obligated to follow through with payment of the same, and the Complainant was therefore entitled to rely on those representations and in fact did rely on those representations to his detriment. Based upon the Defendant's representations, Complainant altered his position from hourly to salary giving up valuable consideration without receiving the promised bonus.

10. The Complainant also relying upon Defendant's oral and written promises, and

representations when he executed an Employment Agreement which included a covenant not to compete greatly hindering Complainant's ability to obtain future employment.

11. The Defendant's failure to pay unto Complainant the agreed-upon percentage of net profit is in breach of the Defendant's oral and written promises, and representations to Complainant, and the terms of the Employment Agreement and its covenant not to compete are unconscionable and unreasonable to time and place.

12. The Defendant's termination of Complainant was without just cause, was in breach of the terms of the Employment Agreement executed by Complainant, was wrongful, in bad faith, and with actual or implied malice.

13. The Defendant's termination of Complainant was in violation of the Complainant's rights under the Family Medical Leave Act and therefore violated the Public Policy and Statutes of the Commonwealth of Virginia.

14. As a direct and proximate cause of the Defendant's wrongful discharge, Complainant has suffered damages which include but are not limited to loss of income, loss of future employment opportunity, physical and mental anguish, and emotional and mental distress.

WHEREFORE, your Complainant, Ronald A. McClellan, requests that the Court enter an Order releasing Complainant from the covenant not to compete as a result of the Defendant's breach of their Employment Agreement with Complainant; the Complainant also demands judgment against the Defendant, Commercial Electronics, Inc., in the amount of Two Hundred Fifty Thousand Dollars ($250,000), and his costs and expenses incurred in this action.

Dated this 28th day of June, 2018.

*[signature: Anthony E. Collins]*

ANTHONY E. COLLINS
Counsel for Complainant
P.O. Box 3465
Wise, VA 24293
(276)328-2433

RONALD A. McCLELLAN
By Counsel

```
VALIDATE CASE PAPERS
RCPT : 180000059..
DATE : 07/09/2018 TIME: 06:37
CASE : 16-CL13000646-00
ACCT : MCCLELLAN, RONALD A
AMT. : $304.00
```

## AGREEMENT AND COVENANT

THIS AGREEMENT made and entered into this 27th day of October, 1987 between COMMERCIAL ELECTRONICS, INC., a Virginia corporation (hereinafter referred to as the "Company") and Ron McClellan (hereinafter referred to as the "Employee"), as follows:

WHEREAS, the Employee desires to be employed by the Company in the position described below pursuant to the terms and conditions hereinafter set forth and the Company desires to employ the Employee in a capacity in which he may receive or know certain trade secrets and confidential information of the Company's;

WHEREAS, the Company is engaged in business that is highly competitive, rapidly developing and unique, and the performance and conducting of the Company's business requires highly specialized, unique technical knowledge, skills and competence not readily obtainable elsewhere;

WHEREAS, the Company has a substantial number of customers in various areas and, as a result of the expanding nature of the Company's business, it plans and intends in the future to develop additional customers in different geographic areas and markets and, in the type business the Company is engaged in, knowledge of the names and needs of customers is of great value to the Company and its competitors;

WHEREAS, in the course of the Employee's employment and work the Employee has acquired and/or will acquire from the Company an extensive amount of valuable training, knowledge, expertise and confidential information and knowledge;

NOW THEREFORE, in consideration of such employment, the mutual promises and obligations hereinafter set forth, and other good and valuable consideration, the receipt and adequacy of all of which is hereby acknowledged, the parties hereto do agree as follows:

1. As of the date hereof, the Company employs the Employee and the Employee accepts said employment upon the terms and conditions hereinafter set forth and upon no other terms or conditions.

2. The Employee shall, effective as of the date hereof, have the position of Bench Technician of Commercial Electronics, Inc. and shall have the necessary and

ordinary duties commensurate with said position unless and until otherwise directed by the President thereof, together with such other and further duties as are expressly delegated to him by President. Specifically included in the duties of the Employee are the following:

(a) The evaluation, testing, calibration, analyzing, upgrading, repairing, maintenance, and restoration of electronic CATV amplifiers and associated and related equipment to factory and/or customer specifications and requirements;

(b) The analysis and evaluation of CATV systems and all parts and components thereof in general, including, without limitation, CATV amplifiers and associated and related equipment, and underground and aerial cable, antenna systems and the like used in or related to such systems and equipment, and to diagnose and service and to perform and make any and all kinds of repairs, maintenance, adjustments, and corrections in regard to the same; and

(c) In conjunction with performing the functions and activities described subparagraphs (a) and (b) above, to solicit evaluation, diagnostic, service, repair, maintenance and corrective business from or in regard to CATV systems and businesses on behalf of the Company, subject to approval by the President of the Company.

3. As compensation for the services rendered hereunder, the Employee shall receive an annual salary of $11,440.00, payable in installments at least monthly, or more often, in the sole discretion of the Company. The Company in its sole discretion may pay other compensation or bonuses, but is not obligated to do so.

4. The employment hereunder is to commence as of the date of this agreement and shall continue hereafter for the period of one year. This agreement shall be automatically renewed for one year periods thereafter, unless terminated as set forth in paragraph 5 below.

5. (a) The Company shall have the right to terminate Employee's employment hereunder at any time in the event of default or non-performance by the Employee of any of the provisions of this agreement or his obligations and duties hereunder. No advance notice shall be required in the event of such a termination for fault.

(b) The Company or the Employee may, without cause, terminate this agreement by giving the other party fifteen (15) days notification thereof, in writing. Notice of such termination shall be valid and effective as to Employee if

2

physically delivered to Employee or if sent in an adequately stamped envelope to his mailing address as shown on the records of the Company.

6. The Employee shall be entitled each year during which this agreement is in effect to a vacation in accordance with the regularly established vacation policy of the Company and in addition shall be entitled to those insurance benefits in accordance with the regularly established policy of the Company and as set forth in the insurance literature regularly distributed to the employees of the Company.

7. Employee shall devote his best efforts and his entire time to the performance of his duties hereunder and shall not during the term of this agreement be engaged in any other business activity, whether or not such business activity is pursued for gain, profit or other pecuniary advantage, unless expressly authorized to do so, in writing, by the Company.

8. During the effective period of this agreement and for a period of eighteen (18) months immediately following the termination of this agreement, whether for cause or not, the Employee covenants and agrees that he will not act or engage as an employer, employee, principal, agent, servant, independent contractor or otherwise, directly or indirectly, in his own behalf or in the behalf of any other person or legal entity, or in conjunction therewith, in the following activities in the areas described below: (a) The evaluation, testing, calibration, diagnosis, analysis, upgrading, service, repair, maintenance, and restoration of electronic CATV amplifiers and associated and related equipment to factory and/or customer specifications and requirements; (b) The analysis and evaluation of CATV systems and all parts and components thereof in general, including, without limitation, CATV amplifiers and associated and related equipment, and underground and aerial cable, antenna systems and the like used in or related to such systems and equipment, and the diagnosis and service and the performance and making of any and all kinds of repairs, maintenance, adjustments and corrections in regard to the same; and (c) the solicitation of evaluation, diagnosis, service, repair, maintenance and corrective business from or in regard to CATV systems and businesses. The areas to which this paragraph 8 applies are as follows: Scott County, Virginia, being the county in which the principal place of business of the Company is located; in any other city and/or county of any state in which the Company, at the time of the termination of this agreement, whether for cause or not, maintains an office or place of business; and in any city and county in which the Company has performed activities, services and operations of the kind which the Employee would be prohibited from engaging in pursuant to the terms of this paragraph 8 within twelve (12) months prior to the date of the

3

termination, whether for cause or not. Ownership of more than 1% of the outstanding stock of a similar business shall constitute acting as a principal thereof.

9. During the effective period of this agreement and for a period of eighteen (18) months immediately following the termination of this agreement, whether for cause or not, the Employee covenants and agrees that he will not, directly or indirectly, as an employer, employee, principal, agent, servant, independent contractor or otherwise, on his own behalf or on behalf of any other person or legal entity, or in conjunction therewith, act, solicit, divert, accept, or attempt to take away or perform the business, work or patronage of any of the clients or customers of the Company, past or present, insofar as said business, work or patronage relates to or involves the activities described in subparagraphs (a), (b) and (c) of paragraph 2 of this agreement.

10. The Employee further covenants and agrees that for and during the entire term of this employment with the Company and for any and all periods of employment with the Company prior to this agreement, any and all trade secrets, confidential information, data, figures, quotations, projections, estimates, customer lists, personnel history and records, plans for new products and processes, tax records, accounting procedures, discounting and pricing procedures and methods, promotions and marketing information and procedures, sales information, potential customer lists, patents, licenses, testing techniques and procedures and all similar documents and information relating to the Company possess by, known by, developed by or communicated to Employee in any way shall be considered and kept as the private and confidential records of the Company and shall not be given or divulged to any person, firm or institution except with the prior written authorization of the President of the Company. Employee further covenants and agrees that, upon the termination of this agreement, whether with or without cause, the Employee shall absolutely continue to treat as private and confidential any and all trade secrets, confidential information, data, figures, quotations, projections, estimates, customer lists, potential customer lists, tax records, personnel history and records, plans for new projects and processes, accounting procedures, promotion and marketing information and procedures, sales information, patents, licenses, discounting and price information and methods, testing techniques and procedures, and all other similar documents and information of the Company and that he will not release, transmit or any way convey such information to any person, firm or institution, whether for consideration or not, whether by oral communication, written communication, deposition or otherwise except upon the prior written authorization to do so from the President of the Company.

Employee shall, upon termination of his employment, immediately transfer to the Company any and all records, documents or physical information or devices relating to his employment with the Company or the business of the Company.

11. In the event of a breach or threatened breach by the Employee of the provisions of paragraphs 8, 9 or 10, the Company shall be entitled to an injunction restraining the Employee from violating, in whole or in part, the prohibition of such paragraph or paragraphs. Nothing herein shall be construed as prohibiting the Company from pursuing all and any other remedies available to it for such breach or threatened breach, including the recovery of damages from the Employee.

12. The Employee expressly acknowledges that the services he performs and will perform pursuant to his employment with the Company are unique and that he has in the course of his employment with the Company, both under this agreement and prior to the date hereof, received and obtained information regarding the operation of the Company and that he will continue to receive such secrets and information in the future pursuant to his employment hereunder. Employee expressly acknowledges that the disclosure of such information would seriously harm the Company.

13. The waiver by the Company of a breach of any provision of this agreement shall not operate or be construed as a waiver of any subsequent breach hereof by the Employee.

14. If any term of this agreement is declared by a court of competent jurisdiction to be illegal or in conflict with any law, the validity of the remaining terms of this agreement shall not be affected thereby. It is the intent of the parties that this agreement be enforced by any court having proper jurisdiction to the fullest extent possible.

15. This agreement cannot be changed, modified or amended in any respect, except by a written instrument signed by both parties hereto, which specifically refers to this agreement and states that it is an amendment thereof.

16. This agreement constitutes the entire agreement of the parties hereto and no representation, inducement or provision (whether oral or in writing) between the parties not embodied herein shall be of any force or effect.

17. This agreement was negotiated and executed in the State of Virginia and shall be governed by and construed under the laws of the State of Virginia.

5

18. Any prior agreements between the parties, whether oral or written, in regard to employment are hereby replaced by this agreement and are accordingly terminated and voided.

For the Company:

COMMERCIAL ELECTRONICS, INC.

By: _____, President

Witness: _____

EMPLOYEE:

Ronald A. McClellan

Witness: _____

6

## AMENDMENT TO AGREEMENT AND COVENANT

This Amendment made and entered into this ___10th___ day of January, 1991, between COMMERCIAL ELECTRONICS, INC. (hereinafter referred to as "Company") and RON MCCLELLAN (hereinafter referred to as "Employee"), as follows:

WHEREAS, the Company and the Employee entered into an Agreement and Covenant on or about October 27, 1987 (hereinafter referred to as "Original Agreement"), and the parties now mutually desire to amend that Original Agreement to, among other things, specifically include additional services which are to be covered under the non-competition provisions of said Original Agreement;

WHEREAS, the Company and Employee acknowledge that the Company is engaged in a business that is highly competitive, rapidly developing and unique, and that it is reasonably anticipated that the Company will expand its services to include research, repair, sales and on-site servicing of products related to fiberoptics, digital switching equipment, power supplies, computers and simular equipment not necessarily related to the CATV Industry;

WHEREAS, in the course of Employee's employment and work, the Employee has acquired and/or will acquire valuable training, knowledge, expertise and confidential information and trade secrets pertaining to such expanded services;

WHEREAS, both parties hereby acknowledge that the Company has a legitimate interest in protecting said confidential information, trade secrets and in any specialized training and knowledge imparted to the Employee;

NOW THEREFORE, in consideration of such employment and the mutual promises and obligations set forth hereinafter, and other good and valuable consideration, the receipt and adequacy of all which is hereby acknowledged, the parties hereto do agree as follows:

1. As of the date hereof, the Company continues to employ the Employee and the Employee accepts such continued employment upon the terms and conditions hereinafter set forth and upon other terms or conditions set forth in the Original Agreement.

2. The employee shall continue in the position of Night Shift Line Gear Production Supervisor.

3. The Employee's compensation shall be revised and increased in that he shall receive $10.75 per hour.

4. The termination provision of the Original Agreement shall apply with the added provision that the Company may, in its discretion, upon its giving of the required fifteen (15) calendar days' notice, pay the Employee for the period of the notice in lieu of the Employee actually continuing to work during the notice period.

5. The non-competition provisions of the Original Agreement are hereby modified to include services which can generally be described as follows:

> The research of fiberoptic technology as it applies to CATV and telecommunications, the development of repair techniques to be performed on fiberoptic-related equipment, the repair and servicing of fiberoptic related equipment, sales and on-site servicing of products related to fiberoptics, as well as research, devolopment of repair techniques,

repairs and servicing of digital switching equipment, power supplies, computers and similar equipment not necessarily related to the CATV industry.

However, it is understood that it is not the intent of this Amendment that any service be protected which the company has not rendered to customers or is not involved in developing or researching, nor is any geographical area covered which is not protected by virtue of the customer location provisions of the Original Agreement.

6. No other provisions of the Original Agreement are amended or changed by this Amendment.

7. If any of the terms of this Amendment are declared by a court of competent jurisdiction to be illegal or in conflict with any law, the validity of its other terms and the terms of the Original Agreement shall not be affected thereby.

EMPLOYEE: *Ronald A. McClella*

For the Company:
COMMERCIAL ELECTRONICS, INC.
By: *[signature]*
Robert G. Parsons, President

*[signature]*
WITNESS

# AMENDMENT TO EMPLOYMENT AGREEMENT

This Amendment to Employment Agreement (the "Agreement") is made and entered into by and between Ron McClellan (the "Employee") and Commercial Electronics, Inc. and its subsidiaries and operating units (the "Company").

Whereas, the Company desires to alter its payroll schedule to avoid complications in processing payroll; and

Whereas, the Employee desires not to have any time gaps in receiving payroll checks; and

Whereas, the Company and the Employee desire to set forth in writing the terms and conditions of their Amendment to their Employment Agreement to allow the Company to alter its payroll schedule while not causing the Employee any time gaps in receiving payroll checks.

Now, therefore, in consideration of continued employment and the mutual agreements herein set forth, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. To alter the Company's payroll schedule to allow the Company eight (8) days from the end of the pay period to process payroll checks, which will be effective Friday, ~~May 20, 2016~~ ~~June 3rd~~ 5-20-2016. *RLP*

2. To avoid any time gaps in the Employee receiving payroll checks, the Company will pay the Employee a bonus equal to one week of pay.

3. To further the implementation of Paragraph 2 above, Paragraph 17 of the Parties' Employment Agreement will be deleted in its entirety and replaced with the following:

    a. 17. The Employee's contractual employment shall continue for a period of one year, beginning on the date of execution of this Agreement and ending one year hence, or until such earlier date as may be specified by written notice delivered by the Company or by the Employee to the other party, that this Agreement shall terminate on a date not sooner than ten (10) days after delivery of such notice. If not terminated by either party during its one year term by notice as provided herein, this Agreement will renew automatically for successive periods of one year each. Should the Company terminate the Employee's employment hereunder, it may elect to pay the employee for the ten-day notice period in lieu of notice and of requiring or permitting the Employee to work during that time.

This the 11th day of May, 2016, at Gate City, Virginia.

_____
Employee

COMMERCIAL ELECTRONICS, INC

_____
Robert G. Parsons, Vice-President

# EMPLOYMENT AGREEMENT

This Employment Agreement (the "Agreement") is made and entered into by and between Ronald A. McClellan (the "Employee") and Commercial Electronics, Inc. and its subsidiaries and operating units (the "Company").

Whereas the Company is engaged in, among other services, the highly specialized repair, modification, upgrading and calibration of electronic, power, fiber optic, and associated equipment primarily used in, but not limited to, the cable television industry, the sale of electronic parts and equipment to commercial and industrial customers including the cable television industry, various cable television engineering and consulting services including proof-of-performance testing and the Company intends to maintain and expand its customer base for such services, as well as improve and expand the services it renders; and

Whereas, the Company desires to protect its interests and competitive position in its business(es); and

Whereas, the Company and the Employee have entered into a formal employment relationship for their mutual benefit; and

Whereas, the Company and the Employee desire to set forth in writing the terms and conditions of their agreements and understanding; and

Whereas, the Company desires to receive from the Employee a covenant not to compete and not to disclose certain information regarding the Company's business.

Now therefore, in consideration of employment and the mutual agreements herein set forth, the Parties agree as follows:

1.  The Employee will be employed as Chief Technician, and will perform a variety of duties, including, but not limited to the following: (1) supervise the evaluation, testing, calibration, analysis, upgrading, repair, maintenance, and/or modification of electrical, electronic, and/or fiber optic equipment; and (2) evaluate, test, calibrate, analyze, upgrade, repair, maintain, and/or modify electrical, electronic, and/or fiber optic equipment. The Employee's work will also encompass duties in other aspects of the Company's business and related enterprises, subsidiaries, etc., including any additional enterprises in which the Company may become involved in the future. The Employee represents and warrants to the Company that, in carrying out his duties and responsibilities, the Employee will comply will all lawful reasonable instructions which he may receive from any supervisors or superiors representing the Company and that he will obey all laws and safety regulations in connection with his service to the Company and its customers.

2.  The Employee agrees to comply with and be bound by the terms and conditions of this Agreement, some of which survive his separation of employment when, and if, that occurs.

1

3. In consideration for the Employee's Agreement and the Employee's performance in accordance with this Agreement, the Company agrees to continue to employ the Employee pursuant to the conditions enumerated herein.

4. The Employee acknowledges and agrees that effective performance of the Employee's duties requires the highest level of integrity and the Company's complete confidence in the Employee's relationship with other employees of the Company and with all persons dealt with by the Employee in the course of employment.

5. During the term of employment the Employee shall well and faithfully serve the Company and shall not, during the term, be employed or engaged in any capacity in promoting, undertaking, becoming affiliated with, or carrying on any activities in connection with another business, whether or not for profit, without the prior written notice to, and approval of, the Company.

6. The Employee is employed on a full-time basis for the Company and it is understood and agreed by the Employee that the hours of work involved may vary and are irregular and are those hours required to meet the objectives of the employment.

7. The Employee's rate of pay shall be $1,892.05 [struck through; handwritten: $1933.00] per week. This pay rate may change from time to time as circumstances warrant and as agreed between the Parties hereto.

8. The Employee shall be accorded the right to participate in any and all group medical insurance plans and other benefit programs which may be in effect during his employment for employees within his general classification. The Employee shall also be entitled to reasonable periods of absence for vacation or other various reasons of illness or disability in accordance with the law and with the policies of the Company. It is understood that medical insurance and other benefits may not be applicable to part-time employees.

9. It is understood and agreed that the Company reserves the right to unilaterally introduce various salary, wage, or commission arrangements designed to remunerate fairly the Employee for his efforts. Should the Employee find the salary or benefit package proposed by the Company to be unacceptable, the Employee may terminate this Agreement pursuant to the provisions of this Agreement.

10. The Employee acknowledges that, as Chief Technician/Production Manager, the Employee has acquired and will continue to acquire information about certain matters and things which are confidential to the Company whether or not directly related to Employee's specific duties, and which information is the exclusive property of the Company, including:

      a. Product design and production information;
      b. Names and addresses, buying habits and preferences of customers of the Company;
      c. Pricing policies, techniques, and concepts;

2

      d.      Trade secrets; and
      e.      Financial information.

11. The Employee acknowledges that the information referred to herein could be used to the detriment of the Company. Accordingly, the Employee agrees and promises not to disclose such information to any third party either during the term of his employment except as may be necessary in the proper discharge of his employment under this Agreement, or after the term of his employment, however caused, except with the prior written permission of an officer of the Company. The Employee hereby further acknowledges that he understands that the Company operates in a highly-competitive business and that certain aspects of its sales and services could be used by competitors to the detriment of the Company. Accordingly, the Employee acknowledges that the Company has a unique protectable interest in its confidential information and in its customer relationships.

12. In consideration of the Company's Agreement to employ him in the service of the Company, the Employee covenants and agrees that he will not, for the period of his employment and for two years from the date of expiration of this Agreement and within a twenty five (25) mile radius of any of the Company's offices and within any city or county in any state serviced by the Employee or the Company, engage directly or indirectly (either as principal, agent or consultant or through any corporation, firm or organization in which he may be an officer, director, employee, shareholder, partner, member, or be otherwise affiliated) in the business of specialized electronic and fiber optic equipment repair, sales, and service of equipment of the nature sold and/or serviced by the Company or other services of any kind, including proof-of-performance testing of cable television systems, to any customers which have been served in any capacity by the Company, or divert any customers away from the Company, which have been served by the Employee or by the Company within a period of twenty four (24) months prior to the termination of this Agreement or which have been contacted or solicited for such business by the Employee or by the Company within twelve (12) months prior to the termination of his employment hereunder. This covenant, however, is not intended to preclude Employee from working in the cable/telecommunications industry as long as such employment does not in any way compete with the Company.

13. The Employee further agrees that he will not, during the course of his employment or thereafter, directly or indirectly, solicit or induce any other employee of the Company to leave the employment with the Company in order to accept employment with any other person, firm, partnership, or corporation.

14. The Employee agrees to communicate to the Company promptly and fully all inventions, discoveries, concepts, and ideas, whether or not patentable or copyrightable, including but not limited to hardware and apparatus, software, processes, techniques and methods, as well as improvements thereof and knowledge related thereto, conceived, contemplated, or reduced to practice (whether solely by Employee or jointly with others) known to Employee prior to execution of this Agreement or arising during the period of the term of this Agreement where such are related to the present or prospective business, work or investigations of the Company or which result form

3

any work the Employee performs with the use of any equipment, facilities, materials, or personnel of the Company, or which result from or are suggested by any work which the Employee may do for or on behalf of the Company.

15. The Employee hereby assigns to the Company or the Company's designee his entire right, title, and interest in and to all such developments and all copyrights and work rights in such developments.

16. The Employee agrees to deliver to the Company promptly upon request or upon the date of termination of employment hereunder all documents or productions, computer discs or tapes, copies thereof, and other materials, data or equipment in his possession owned by or pertaining to the business of the Company, including, but not limited to confidential information, and thereafter to promptly return all equipment, documents, materials, copies, and negatives thereof and any other materials in his possession of whatever nature pertaining to the business of the Company and/or originating with the Company that comes into his possession.

17. The Employee's contractual employment shall continue for a period of one year, beginning on the date of execution of this Agreement and ending one year hence, or until such earlier date as may be specified by written notice delivered by the Company or by the Employee to the other party, that this Agreement shall terminate on a date not sooner than fifteen (15) days after delivery of such notice. If not terminated by either party during its one year term by notice as provided herein, this Agreement will renew automatically for successive periods of one year each. Should the Company terminate the Employee's employment hereunder, it may elect to pay the employee for the fifteen-day notice period in lieu of notice and of requiring or permitting the Employee to work during that time.

18. The Company and the Employee acknowledge, agree, and covenant that neither the Employee nor any officer, director, or manager of the Company will make any statements, comments, or communications that could constitute disparagement of the other Party or that may be considered to be derogatory or detrimental to the good name or business reputation of the other Party. This mutual non-disparagement covenant applies to any public or private statements, comments, or communications in any form, whether oral, written, or electronic. The Company and the Employee further agree that they will not in any way solicit any such statements, comments, or communications.

19. The Parties hereto agree that this Agreement represents the full and complete understanding between them with respect to the subject matter hereof and supersedes all prior representations and understandings whether oral or written.

20. This Agreement shall be binding upon and shall inure to the benefit of both the Company and the Employee and their respective successors, heirs, and legal representatives, but neither this Agreement not any rights hereunder may be assigned by the Employee without the written consent of the Company. The Employee's signature below on this Agreement affirms that

4

the Employee has read and understands all the provisions of this Agreement and the Employee agrees to comply with all terms hereof.

21. The language contained herein shall be deemed to be that approved by both Parties hereto and no rule of strict construction shall be applied against any Party hereto.

22. The Employee represents that he has no agreements with or obligations to others with respect to developments, proprietary information or confidential information, belonging either to the Company or to others, in conflict with the foregoing.

23. The invalidity or unenforceability of any provisions of this Agreement, or any terms hereof, shall not affect the validity of this Agreement as a whole, which shall at all times remain in full force and effect to the fullest extent of the law.

24. The Agreement was negotiated and executed in the Commonwealth of Virginia and shall be governed by and construed under the laws of the Commonwealth of Virginia.

25. The Employee and the Company agree that the sole and exclusive forum for any litigation arising out of this Agreement shall be in an appropriate state or federal court located in Scott County, Virginia, and the Employee and the Company submit to the jurisdiction of such court.

26. The waiver by the Company of a breach of any provision of this Agreement shall not operate to be construed as a waiver of any subsequent breach hereof by the Employee.

27. In the event that the Employee shall breach one or more of the provisions of this Agreement, then the Company shall be entitled to seek injunctive relief against the Employee. The Employee shall further be liable for all damages, courts costs, and reasonable attorneys' fees incurred by the Company in enforcing the provisions of this Agreement. The provisions of Paragraphs 10, 11, 12, 13, 14, 15, 16, 17, 18, 20, 24, 25, and 27 hereof shall survive the termination of this Agreement.

This the 14th day of January, 2014 at Gate City, Virginia.

_____  
Ronald A. McClellan

COMMERCIAL ELECTRONICS, INC

_____  
Robert G. Parsons, President

5